UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS DISTRICT 9 PENSION PLAN; NORTHERN CALIFORNIA-NORTHERN NEVADA SOUND & COMMUNICATION DISTRICT No. 9 HEALTH & WELFARE TRUST FUND; NORTHERN CALIFORNIA-NORTHERN NEVADA SOUND & COMMUNICATION DISTRICT No. 9 APPRENTICESHIP & TRAINING COMMITTEE; JOHN O'ROURKE, as Trustee of the above,<br><br>            Plaintiffs,<br>    v.<br><br>METROPOLITAN NETCOMM, INC., a California corporation,<br><br>            Defendant. | Case No.: 10-CV-05464-LHK<br><br>ORDER GRANTING IN PART AND DENYIN IN PART AMENDED MOTION FOR DEFAULT JUDGMENT |

Three employee benefit trusts (International Brotherhood of Electrical Workers District 9 Pension Plan; the Northern California-Northern Nevada Sound and Communications District No. 9 Health and Welfare Trust Fund; and the Northern California-Northern Nevada Sound and Communications District No. 9 Joint Apprenticeship and Training Committee) are funded pursuant to a collective bargaining agreement between an electricians' union (International Brotherhood of Electrical Workers, "IBEW") and an employers' association (National Electrical Contractors Association, "NECA"). The trusts and their trustee, John O'Rourke, (collectively, "Plaintiffs") bring this action against Metropolitan Netcomm, Inc. ("Defendant"). Plaintiffs allege that Defendant is delinquent in its payments into the trusts as required by the collective bargaining

1

agreement, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 145.

Presently before the Court is Plaintiffs' amended motion for default judgment ("amended motion"), ECF No. 18.  Having considered the motion and supporting evidence, Plaintiffs' amended motion for default judgment is hereby GRANTED in part and DENIED in part.

## I. Background

### A. Factual History

In a Complaint filed on December 2, 2010, Plaintiffs allege as follows:

The International Brotherhood of Electrical Workers District 9 Pension Plan ("Pension"), the Northern California-Northern Nevada Sound and Communications District No. 9 Health and Welfare Trust Fund ("Health"), and the Northern California-Northern Nevada Sound and Communications District No. 9 Joint Apprenticeship and Training Committee ("Apprenticeship") (collectively, "Trusts") are multi-employer employee benefit plans pursuant to ERISA 29 U.S.C. §§ 1002(3), (37) and 29 U.S.C. § 1132(d)(1) and jointly trusteed employee benefit trusts pursuant to the LMRA, 29 U.S.C. § 186(c)(5).  Compl. ¶ 3.  Dominic Nolan is a trustee and fiduciary of the Funds under ERISA and the LMRA.  Compl. ¶ 4.  Defendant ACS Controls Corporation is an "employer" "engaged in an industry or activity affecting commerce" (electrical wiring installation) within the meaning of 29 U.S.C. § 152 and 29 U.S.C. §§ 1002-03. Compl. ¶ 8.

At all relevant times, Defendant was a signatory to a Letter of Assent binding it to the 9th District Sound & Communications Agreement & Northern California & Northern Nevada Addendum #2 ("S&C Agreement"), a written collective bargaining agreement between the IBEW Local Union (a union) and the National Electrical Contractors Association (an employers association).  The S&C Agreement also requires Defendant to be bound by applicable Trust agreements, which established the Trusts.  The S&C Agreement requires a monthly payment to each Fund.  *See* Amended Stephenson Decl., Ex. A at 25-28, 30-31 (S&C Agreement arts. V, VIII, IX).  The rates of contributions reflected in the agreements are consistent with the calculations on the benefits transmittal forms prepared by Defendant.  *Compare id.*, Ex. A at 37 (S&C Agreement Wages and Fringes Schedule 2-C, requiring employer contributions of $7.35 per job hour for

1   Health Insurance, $1.10 per job hour for Apprenticeship, and $1.70 per job hour for 9th District

2   Pension); *with id.* Exs. F, H (benefits transmittal forms prepared by Defendant for January 2010

3   and February 2010, calculating benefits at the Schedule 2-C rates).

4           Defendant's benefit transmittal forms also show flat monthly payment of $1,000 to the

5   Health Trust, to purchase health insurance coverage for non-union employee Tori Angland, *id.* Ex.

6   F, H, pursuant to the Heath Trust Agreement's provision allowing such collateral benefits

7   purchases. *See id.*, Ex. C at 29-30 (Health Trust Agreement art. VII § 5 "Non-Bargaining Unit

8   Employees of Participating Employers").

9           Defendant's benefit transmittal forms also calculate fringe benefit contributions paid to

10  non-parties. Defendants paid $0.11 per employee hour to the National and the Local NECA-IBEW

11  Labor Management Co-Operation Committees (LMCC). Defendants also paid 3% of monthly

12  payroll to the National Electrical Benefit Fund (NEBF); 0.5% of monthly payroll to the

13  Administrative Maintenance Fund (AMF); and 0.5% of monthly payroll the National Electrical

14  Industry Fund benefiting the National Electrical Contractors Association (NECA). *See id.* Ex. F,

15  H; *see also id.*, Ex. A at 37 (S&C Agreement Wages and Fringes Schedule 2-C, setting forth

16  LMCC, NEBF, and AMF payments); Ex. A at 26 (S&C Agreement art. VII, setting forth NECA

17  payments).

18          The Trust Agreements provide for prompt payment of all employer contributions to the

19  Funds and in case of late payments, the Trust Agreements provide for liquidated damages,

20  prejudgment interest, and attorney's fees. *See id.*, Ex. C (Health Trust Agreement art. III § 4,

21  requiring payment by the tenth of the month and setting forth 10% liquidated damages and 8%

22  annual interest as penalties for delinquency; art. III § 9, providing for payment of attorney's fees

23  for collection actions); Ex. D (Pension Trust Agreement art. VIII § 2, requiring payment by the

24  twentieth of the month and setting forth 10% liquidated damages and 8% annual interest as

25  penalties for delinquency; art. VIII § 5, providing for payment of attorney's fees for collection

26  actions); Ex. E (Apprenticeship Trust Agreement art. IV § 4, requiring payment by the tenth of the

27  month and setting forth 10% liquidated damages and 12% annual interest as penalties for

28  delinquency; art. IV § 7, providing for payment of attorney's fees for collection actions).

3

Case No.: 10-CV-05464-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT

Plaintiffs allege that Defendant breached the Trust Agreements by failing to pay required contributions for the four months of December 2009 through March 2010.  *See* Compl. ¶ 20. Plaintiffs allege two causes of action: (1) failure to make obligatory payments to a multiemployer plan under the terms of a collective bargaining agreement in violation of ERISA, Compl. ¶ 11-13; and (2) breach of Articles VI and VII of the S&C Agreement in violation of the LMRA.  Compl. ¶ 14-15.

### B. Procedural History

On December 12, 2010, Plaintiffs filed this suit.  *See* ECF No. 1.  On December 22, 2010, Plaintiffs served Defendant with the summons and complaint.  *See* ECF No. 5.  Pursuant to Federal Rule of Civil Procedure 12(a)(1), Defendant's answer was due on January 12, 2011.  *See id.*  On February 9, 2011, as a result of Defendant's failure to answer the complaint, Plaintiffs filed a motion for entry of default.  *See* ECF No. 6.  On March 1, 2011, the Clerk of Court entered default.  *See* ECF No. 11.  Plaintiffs filed a motion for default judgment on April 19, 2011.  *See* ECF No. 15.  On June 25, 2011, the Court denied Plaintiffs' initial motion for default judgment on the grounds that insufficient evidence was submitted to support Plaintiffs' damages and attorney's fees calculations.  *See* ECF No. 17.  Presently before the Court is Plaintiffs' amended motion for default judgment, filed with supporting amended declarations on July 25, 2011.  *See* ECF No. 18.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), when a defendant fails to timely answer a complaint, the plaintiff may move the Court for an entry of default judgment.  The grant of default judgment is within the discretion of the Court.  *Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir. 1986).  In the Ninth Circuit, the district court must consider seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. Discussion

Plaintiffs move the Court to enter default judgment against Defendant for unpaid contributions, liquidated damages for unpaid contributions, interest for unpaid contributions, and attorney's fees and costs. Mot. at 3-4.

### A. Default Judgment

Plaintiffs have presented proof of adequate service of process, and Defendant has failed to timely answer, leading the Clerk of Court to enter default against Defendant. *See* ECF Nos. 5, 11. The Court thus has discretion to grant or deny a default judgment under Federal Rule of Civil Procedure 55(b). *See Eitel,* 782 F.2d at 1471-72. Although strong public policy favors decisions on the merits, in light of Defendant's refusal to litigate, the Court must examine whether default judgment is appropriate in this case under *Eitel*.

Defendant has not presented a defense or otherwise communicated with the Court. Thus, Defendant has failed to show excusable neglect. If Plaintiffs are not granted default judgment, the Unions and Funds cannot recover the contributions owed to them. *See Bay Area Painters and Tapers Pension Trust Fund v. Lombari,* No. 10-0709 SC, 2010 WL 3749401, at *3 (N.D. Cal. Sept.23, 2010). The Court finds that Defendant's failure to demonstrate excusable neglect, measured against the possibility of prejudice to Plaintiffs, favors default judgment. *See San Mateo Elec. Workers Health Care Trust v. ACS Controls Corp.*, No. 09-CV-05519, 2010 WL 4916420, at *3 (N.D. Cal., November 22, 2010).

Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true except as to the amount of damages. *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977). Here, the Clerk of Court entered default on March 1, 2011. Upon review of Plaintiffs' Complaint, and pursuant to ERISA § 502, Plaintiffs have standing to enforce provisions of ERISA or to obtain appropriate equitable relief to redress certain violations. 29 U.S.C. § 1132 (2006). Further, the Court finds that Plaintiffs have adequately alleged a violation of § 515 of ERISA by showing that Defendant did not contribute to the Trusts as required by the Trust Agreements. 29 U.S.C. § 1145. Thus, the merits of Plaintiffs' claims are deemed valid. Because the allegations are taken as true, there is no possibility of a dispute concerning material facts. These factors favor granting default

judgment for Plaintiffs. *See San Mateo Elec. Workers Health Care Trust v. ACS Controls Corp.*, No. 09-CV-05519, 2010 WL 4916420, at *3 (N.D. Cal., November 22, 2010).

A large sum of money in dispute weighs against granting default judgment. *See Eitel,* 782 F.2d at 1472 (affirming denial of default judgment for claim to $3 million). Here, Plaintiffs seek $29,668.08, inclusive of attorney's fees and costs. Mot. at 10. This is a small amount when compared to "the potential loss of benefits by Defendant's employees as a result of Defendant's conduct." *See Bd. of Tr. of the N. Cal. Sheet Metal Workers, v. Peters,* No. C-00-0395, 2000 U.S. Dist. Lexis 19065, at *5 (N.D. Cal. Dec. 29, 2000). Thus, the Court finds that this factor favors default judgment. *See San Mateo Elec. Workers Health Care Trust v. ACS Controls Corp.*, No. 09-CV-05519, 2010 WL 4916420, at *3 (N.D. Cal., November 22, 2010).

In sum, the Court finds that the *Eitel* factors favor granting default judgment. Accordingly, the Court GRANTS in part Plaintiffs' amended motion for default judgment. For the reasons explained below, however, the Court DENIES a portion of the remedy requested.

**B. Remedy**

Plaintiffs contend that Defendant should pay delinquent contributions, liquidated damages, interest, and attorney's fees and costs. Mot. at 5-10.

This action was brought by Plaintiff O'Rourke, the fiduciary of the Trusts, to enforce Defendant's duties to make regular contributions to the Trusts under 29 U.S.C. § 1145. Accordingly, the Court is obligated to award the unpaid contributions, interest on the contributions, the greater of interest on the unpaid contributions or liquidated damages as provided by the plan, and reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

The Ninth Circuit has held that this provision is mandatory, and not discretionary, when (1) defendant was delinquent when the action was filed, (2) the court is entering a judgment against defendant, and (3) the Trust Agreements provide for these awards. *Nw. Admin., Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir. 1996).

*1. Contributions*

Under the Trust Agreements, contributions are due by either the tenth or twentieth of the month following the month in which the employees' work was performed. Delinquent contributors

are liable for liquidated damages of 10% on late contributions and for attorney's costs and fees incurred enforcing collection by the Funds.  The Trust Agreements provide for various rates of annual interest on delinquent contributions ranging from 8% to 12%.  In the case of the Pension Trust Agreement, the annual interest rate of 12% is charged not only on the principle, but also on the liquidated damages.  The terms of these agreements are in accordance with 29 U.S.C. § 1132(g)(2), which limit liquidated damages to 20%.

Plaintiffs claim $21,691.17 in delinquent contributions for the four months of December 2009 through March 2010.  Mot. at 5-6.  Plaintiffs derive this figure from a series of emails sent to them on behalf of the Defendant by Tori Angland.  *See* Amended Bissen Decl. ¶ 2, Ex. A.  The emails include a spreadsheet accounting for the specific amount of fringe benefits owed for each month from December 2009 through March 2010: $6,168.36, $4,437.51, $5,736.15, and $5,349.15, respectively.

Plaintiffs further support the amounts owed for the two months of January 2010 and February 2010 with benefits transmittal forms prepared by Defendant.  *See* Amended Stephenson Decl., Exs. F, H.  The January 2010 form shows $4,817.55 fringe benefits owed.  *See id.*, Ex. F.  This is more than the $4,437.51 listed in Exhibit A.  This discrepancy is unexplained, and in fact Plaintiffs suggest that the correct calculation was $5,173.62.  *See id.*, Ex. G.  The Court has independently calculated the amount owed for January 2010, using the formulas listed on Defendant's benefits transmittal form.  These formulas are consistent with the S&C Agreement and the Trust Agreements.  The Court's calculation matched Plaintiffs' calculation of $5,173.62 and suggests arithmetic errors by Defendant.[1]  However, Plaintiffs do not seek to recover the $5,173.62, and instead only seek to recover the $4,437.51 admitted in Defendant's email.

---

[1] The calculation runs as follows:
   Summing the obligations set forth in the S&C Agreement, the Trust Agreements, and the flat payment for Ms. Angland's health insurance, Defendant owes $10.26 for every hour worked by a union employee ($1.70 Pension, $7.35 Health, $1.10 Apprenticeship, and $0.11 LMCC), 4% of total union employee salaries (3% NEBF, 0.5% NECA, and 0.5% AMF), and $1,000 for Ms. Angland.  *See* Factual Background, *supra*; *see also* Amended Stephenson Decl, Exs. A, C, D, E, F.
   The benefits transmittal form for January 2010 shows that the union employees worked 370 hours and earned $9,433.04.  *See* Amended Stephenson Decl., Ex. F.  ($10.26 x 370) + ($9,433.04 x 4%) + $1,000 = $3,796.20 + $377.32 + $1,000 = $5,173.52

Defendant's February 2010 benefits transmittal form shows that the Defendant calculated $5,736.15 in fringe benefits owed. This is the same amount of fringe benefits that Defendant's email later admitted was delinquent, and the amount which Plaintiffs now seek to recover. *See* Amended Stephenson Decl., Ex. H. However, the Court again discovered multiple arithmetic errors by Defendant in the February 2010 form. The correct amount owed is only $3,707.26.[2]

The Court does not accept the accuracy of Defendant's calculations of the amounts owed for December 2009 and March 2010. If Defendant's calculation errors were uniformly incorrect to Plaintiffs' detriment, Plaintiffs might be entitled to simply accept Defendant's own calculations. However, Defendant's calculations were low for January 2010 and high for February 2010, and over these two months combined Defendant overstated its obligations by nearly $1,300. The Court is unwilling to presume the accuracy of Defendant's calculations for December 2009 and March 2010, where Plaintiffs have neglected to submit benefits transmittal forms that would provide evidence as to the hours worked and wages earned by Defendant's employees. Thus, Plaintiffs have provided insufficient evidence as to the amount of unpaid contributions from December 2009 and March 2010. In consequence, the Court cannot determine the contributions owed for these two months. However, Defendant's contribution to the Health Trust for Tori Angland was at a flat rate of $1,000 per month, independent of her hours worked and wages earned. The emails between Ms. Angland and the Plaintiffs provide evidence that Ms. Angland continued working for the Defendant at least into May 2010. *See* Amended Bissel Decl., Ex. A. Therefore, the Court awards $1,000 for December 2009 and $1,000 for March 2010.

In seeking to recover the full amount of fringe benefit contributions owed by Defendant, Plaintiffs overlook the fact that both Defendant's benefits transmittal forms and Plaintiffs' corrected fringe benefits contribution calculations for January 2010 include contributions owed to non-plaintiffs. These non-plaintiffs are the National and the Local NECA-IBEW Labor Management Cooperation Committees (LMCC), the National Electrical Benefit Fund (NEBF), the National Electrical Industry Fund benefiting the National Electrical Contractors Association

---

[2] The benefits transmittal form for February 2010 shows that the union employees worked 240 hours and earned $6,121.40.  ($10.26 x 240) + ($6,121.40 x 4%) + $1,000 = $2462.40 + $244.86 + $1,000 = $3,707.26

8

Case No.: 10-CV-05464-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION FOR DEFAULT JUDGMENT

1   (NECA), and the Administrative Maintenance Fund (AMF).  These entities are not named

2   plaintiffs in this action.  Furthermore, the Court notes that O'Rourke is only named as Plaintiff on

3   the grounds that he is a trustee of the Health, Pension, and Apprenticeship Trusts, and there is no

4   evidence that O'Rourke has a relationship with the non-plaintiff recipients of fringe benefits

5   contributions.  The Court will not award Plaintiffs monies that are owed to non-plaintiffs, simply

6   because the Defendant incurred both sets of obligations through overlapping transactions.

7   Because recovery of monies owed to non-plaintiffs is unwarranted, Plaintiffs' remedy is

8   reduced proportionally.  Plaintiffs are owed $1.70 per hour for Pension, $7.35 per hour for Health,

9   and $1.10 per hour for Apprenticeship, for a total of $10.15 per hour.  Plaintiffs are also owed

10  $1,000 per month for Ms. Angland's health insurance.  For January 2010, $10.15 x 370 + $1,000 =

11  $4,755.50.  For February 2010, $10.15 x 240 + $1,000 = $3,436.  Thus, the Court awards

12  $10,191.50 in unpaid principle for the four month period from December 2009 through March

13  2010.  Plaintiffs had the opportunity to submit documentation of the hours worked by union

14  employees in December 2009 and March 2010, but failed to do so.

### 2. *Liquidated Damages*

16  Plaintiffs seek 10% of the entire unpaid principle in liquidated damages, per the Trust

17  Agreements.  *See* Mot. at 6.  This is an appropriate application of 29 U.S.C. § 1132(g)(2).  *See*

18  *Roofers Local Union No. 81 v. Wedge Roofing, Inc.,* 811 F. Supp. 1398, 1401-02 (N.D. Cal.1991).

19  Thus, Plaintiffs are entitled to an award of $1,019.15 in liquidated damages.

### 3. *Prejudgment Interest*

21  To ease the calculation of prejudgment interest on the unpaid contributions, Plaintiffs

22  consciously make three approximations that work to their own detriment.  First, Plaintiffs seek 8%

23  simple interest per annum on all unpaid contributions, even though unpaid contributions to the

24  Pension Trust are entitled to 12% interest.  *See* Amended Bissel Decl. ¶ 3-6 (calculating interest

25  owed for each month); Ex. D (Pension Trust Agreement art. VIII § 2).  Second, Plaintiffs seek

26  interest only on the principle, even though they are entitled to prejudgment interest on the

27  liquidated damages owed to the Pension Trust.  *Id.*  Third, Plaintiffs begin counting interest from

28  the twentieth of each month, even though the Health Trust and the Apprenticeship Trust are owed

their payments on the tenth of each month. *Id.* Thus, each Trust seeks slightly less than it is owed, but it need not pay for the attorney hours that would be required to calculate each Trust's prejudgment interest independently. The Court finds Plaintiffs' methodology to calculate prejudgment interest reasonable.

The Plaintiffs seek interest running through September 29, 2011. The Court is reluctant to award interest accruing after Plaintiffs' initial, insufficient motion for default judgment. However, because Plaintiffs' recovery has been delayed during the pendency of this amended motion, and because the award of prejudgment interest is not discretionary, the interest is awarded as requested. *See Nw. Admin., Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir. 1996).

Thus, Plaintiffs' are awarded $1,283.99 in prejudgment interest.[3]

### 4.  *Attorney's Fees and Costs*

Plaintiffs also request $2,145.00 in attorney's fees for 11.0 hours of work at $195 per hour and $847.00 in litigation costs incurred from the beginning of the case through the initial motion for default judgment. Mot. at 6-9. Plaintiffs do not seek any fees in relation to this amended motion. *Id.* at 8. In total, Plaintiffs seek $2,992.00 in attorney's fees and costs.

The Court calculates reasonable attorney's fees by calculating the hours "reasonably expended on the litigation . . . by a reasonable hourly rate." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Plaintiffs have submitted evidence of their counsel's experience and of other attorney's fee awards in this District for similar cases. Bissen Decl. ¶¶ 8-12. The Court finds that Plaintiffs' requested rate is "in line with those prevailing in the community for similar services." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The Court also finds that Plaintiffs' requested hours are reasonable because they have omitted the hours related to their amended motion.

Plaintiff seeks $700 in filing fees and $147 for service of process fees, for a total request of $847 in costs. The Court finds these amounts reasonable.

---

[3] The calculation runs as follows:
December: [$1,000 x (618 days/365 days) x 8%]; January: [$4,755.50 x (587 days/365 days) x 8%];
February: [$3,436 x (559 days/365 days) x 8%]; March: [$1,000 x (528 days/365 days) x 8%]
= $135.45 + $611.83 + $420.98 + $115.73 = $1,283.99.

## IV. Conclusion

The unpaid principal, liquidated damages, interest, and attorney's fees and costs described above total $15,486.64. Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' amended motion for default judgment and awards Plaintiffs $15,486.64.

**IT IS SO ORDERED.**

Dated: October 5, 2010

*Lucy H. Koh*
LUCY H. KOH
United States District Judge